**In the Matter of the Revocation of the Driver's License of Harold KNUST.**

**No. 12697.**

Supreme Court of South Dakota.

Submitted on Briefs Jan. 21, 1980.

Decided Feb. 27, 1980.

Paul A. Mueller, Chamberlain, Warren C. May, May, Adam, Gerdes & Thompson, Pierre, for petitioner and respondent Knust.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for defendant and appellant Department of Public Safety; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

---

FOSHEIM, Justice.

The Circuit Court set aside a Department of Public Safety revocation of petitioner's driver's license for refusing a chemical test of his blood following his arrest for DWI. This appeal from the judgment of the court involves further interpretation of the implied consent statute. We reverse and remand.

The petitioner, Harold Knust, left his home at Chamberlain and drove to his office at about 8:00 a. m. on January 30, 1978. He had been taking insulin shots for diabetes at 8:00 a. m. each morning since 1969. On this morning, however, he postponed this injection until about 10:00 a. m. He then drove to Pierre and, at approximately 1:30 p. m., ate a sandwich. Petitioner testified that he had two drinks of hard liquor between 4:30 p. m. and 6:00 p. m. He had no more to drink or eat until about 9:00 p. m., when he became hungry and went in search of food. Knust then drove his car to a gasoline filling station where he bought some candy which he immediately consumed. Shortly after leaving the filling station, he was stopped by a police officer because he was driving erratically in the wrong lane of traffic.

After the Knust vehicle had been stopped, the officer approached the driver's side and tapped on the window with his flashlight. Without looking at the officer, Knust opened the door and fell out of the car. While the officer held the door, appellant took hold of the steering wheel and pulled himself up. He was then asked to produce his driver's license. The officer could smell alcohol and looked around the vehicle to see if there were any open containers. He found none.

Petitioner experienced a great deal of difficulty finding his license, removing it from his wallet, and handing it to the officer. He was then asked to get out of the vehicle, which he did with difficulty. By leaning against the car with his left hand and left side he was able to walk toward the rear of the car. He failed all of the field sobriety tests which were then administered.

When Knust was placed in the patrol car, the officer could again smell a strong odor of alcohol. Petitioner told the officer that he had consumed only a few drinks. He was arrested for DWI and taken to the county jail, where the officer read him the implied consent warning. He stated he did not understand it, whereupon it was again read. Appellant then said he understood it, but refused to submit to a chemical test of his blood.

■ The trial court found that there was probable cause to stop and arrest the petitioner for DWI in violation of SDCL 32–23–1. The court also found that the petitioner was advised of his rights under the implied consent law and that he refused to take a blood test. The trial court went further, however, and permitted the introduction of evidence which indicated that Knust was in an insulin-induced state, rather than an alcohol-related condition. The court concluded that the implied consent law did not apply to the facts in this case since SDCL 32–23–10 relates only to blood alcohol content and not to drugs, blood sugar or other physiological indicia of ability to drive. Appellant contends that until the test is administered and the results are revealed, there is no way of knowing whether the driver's strange behavior is due to alcohol, sugar, or drugs in the blood, and that once the court has found a valid arrest for DWI, there is no allowance for refusal of the blood test. It is the position of the Department that the erratic behavior, whatever its cause, is a distinct and separate issue to be subsequently determined.

The first issue before us, therefore, is whether the court erred in going beyond a finding that there was a refusal to take the blood test. Had the petitioner taken the test requested of him, it would have immediately revealed whether he was under the influence of intoxicating beverages or merely had the smell of alcohol upon his breath. Conceivably, the petitioner's condition was attributable to both diabetes and an excessive amount of alcohol in his blood. If Knust was under the influence of an insulin-induced state rather than alcohol,

that, of course, would be a defense to a criminal charge of DWI. It was not, however, a proper reason for refusing the requested test. If there is probable cause to arrest for DWI, our law makes no provision for any refusal, reasonable or otherwise. When he operated a vehicle on a highway in this state he was deemed to have given his consent to the test.[1]

Once the conditions imposed by the statute are met, the duty to revoke a driver's license is purely ministerial and mandatory. *Chmelka v. Smith,* 81 S.D. 40, 130 N.W.2d 423 (1964). Whether there was evidence in defense to the charge for which he was arrested is wholly irrelevant. *Beare v. Smith,* 82 S.D. 20, 140 N.W.2d 603 (1966). Accordingly, it was error for the trial court to speculate as to whether the defendant was intoxicated or reacting to sugar in his blood as a result of his diabetic condition when he was arrested.[2]

The trial court further found that petitioner was unable to understand and make an intelligent and voluntary choice in response to the requested chemical test of his blood due to his insulin-induced hypoglycemic condition at the time of his arrest and concluded he could not therefore be held responsible for his actions in refusing the test.

We were first confronted with the claim of an appellant that he had no recollection of his refusal to submit to a blood test in *Chmelka v. Smith,* supra. Again, in *Beare v. Smith,* 82 S.D. at 26, 140 N.W.2d at 607, when the question as to whether the

appellant understood the implied consent law was raised, we said: "Even if he may not have fully or correctly understood the statutory provision therefor, or its purpose, this would not serve as a reason in law for refusing the test at the direction of the police officer."

In *Matter of Schuttler,* 262 N.W.2d 61 (S.D.1978), we indicated that it was sufficient if the officer followed the directions of the statutes and that there was no burden on the state to show that the driver understood what was read to him. We therein noted that to allow a defense that the driver did not understand the rights as read to him under the implied consent law would result in the absurdity of the prosecution being deprived of valuable evidence against extremely intoxicated drivers when similar evidence could be used against moderately intoxicated drivers. The driver who was so intoxicated that he could not remember or understand his rights would be able to defeat the purposes of the law. SDCL 32–23–10 does not require that the driver understand the implied consent warning given at the time of arrest.

The judgment of the trial court is reversed and remanded with instructions to enter judgment accordingly.

WOLLMAN, C. J., DUNN and HENDERSON, JJ., and HEEGE, Circuit Judge, concur.

HEEGE, Circuit Judge, sitting for MORGAN, J., disqualified.

1. SDCL 32–23–10 states:

   Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32–23–7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32–23–1.

   Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of §§ 32–23–11 and 32–23–12 in

the event of such refusal with respect to the revocation of such person's driving license.

2. In *Peterson v. State,* 261 N.W.2d 405 (S.D. 1977), however, we observed that while refusal to submit to the test results in mandatory loss of license it also protects a person from a drunken driving charge when his conduct creates the appearance of intoxication but is actually caused by other forces. See also, *Robertson v. State,* 501 P.2d 1099, 1102 (Okl.1972). On the other hand, in *Blow v. Commissioner of Motor Vehicles,* 83 S.D. 628, 164 N.W.2d 351 (1969), we noted that the scientific accuracy revealed by a test may exonerate a suspect just as readily and conclusively as it may incriminate him.